**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4274-19

BUSSEL REALTY CORP.,

     Plaintiff-Respondent,

v.

JOSEPH FRANCO, JAY FRANCO
AND SONS, JMJ MUNCHKINS,
LLC, and FIVE STARS
WAREHOUSING &
DISTRIBUTION NJ, LLC,

     Defendants,

and

152 RIDGE ROAD PROPERTY,
LLC,

     Defendant-Appellant,

and

JOSEPH N. FRANCO,
JAY FRANCO & SONS, INC.,
and JMJ MUNCKINS, LLC,

     Defendants/
     Third-Party Plaintiffs,

v.

152 RIDGE ROAD PROPERTY,
LLC, FIVE STARS
WAREHOUSING &
DISTRIBUTION NJ, LLC, 1735
JERSEY AVENUE PROPERTY,
LLC, and JOSEPH SAADIA,

      Cross Claim Defendants/
      Third-Party Defendants.

_____

Submitted April 21, 2021 – Decided June 8, 2021

Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law
Division, Middlesex County, Docket No. L-1669-18.

Fox Rothschild, LLP, attorney for appellant (Brett A.
Berman, of counsel and on the briefs; Jordan B. Kaplan,
on the briefs).[1]

W. Lane Miller, attorney for respondent.

PER CURIAM

---

[1] Fox Rothschild erroneously listed the appellant as Five Stars Warehousing &
Distribution NJ LLC, on its brief. The appellant, as designated in the notice of
appeal, is 152 Ridge Road Property LLC. In a subsequent letter to the court on
November 6, 2020, Fox Rothschild indicated that its other clients, Five Stars
Warehousing & Distribution NJ LLC, 1735 Jersey Avenue Property LLC, and
Joseph Saadia would not participate in the appeal.

On March 9, 2020, the date this matter was scheduled for trial, the parties placed a settlement agreement on the record in which defendant 152 Ridge Road Property, LLC, promised to pay plaintiff Bussel Realty Corp. $900,000 over various dates in exchange for dismissal of Bussel Realty's complaint seeking a real estate commission. After the parties' efforts to finalize a written settlement agreement reached an impasse and 152 Ridge Road failed to make its first instalment payment, the trial judge entered an April 24 order—that was not appealed—granting Bussel Realty's motion to enforce the settlement agreement.

A successive June 15 order, by a different trial judge, confirmed the April 24 order and entered judgment in favor of Bussell Realty against 152 Ridge Road in the amount of $560,000 for breach of the settlement agreement. (Da122-123). In reaching his decision, the judge dismissed 152 Ridge Road's arguments that: (1) a settlement agreement was not reached because the parties failed to agree upon essential terms on March 9; and (2) that, alternatively, enforcement of the settlement was precluded under the doctrines of impossibility, impracticability, and frustration of performance due to the alleged cessation of their business income caused by the COVID-19 pandemic. Having considered the record, the parties' arguments, and applicable law, we agree with the judge and affirm.

3

## I

In March 2018, Bussel Realty, a real estate brokerage firm, filed a complaint against the sellers Joseph Franco (Franco), Jay Franco and Sons (JFS), and JMJ Munchkins LLC (JMJ) (collectively, the Franco defendants) and the buyers Five Stars Warehousing & Distribution NJ LLC (Five Stars) and 152 Ridge Road, seeking $1.1 million in commission from the sale of a warehouse located at 152 Ridge Road in South Brunswick (the property). An amended complaint, cross claims, a third-party complaint, and motion practice followed. We do not discuss the factual details and procedural history of the dispute prior to the settlement that was placed on the record as they are unnecessary to resolve this appeal, which centers on the settlement and subsequent enforcement efforts.

Trial was scheduled on March 9, 2020, when the parties appeared in court and reached a settlement resolving all claims. Due to the "critical" nature of the settlement terms, the judge had counsel "put the settlement terms on the record, so that there is no misunderstanding as to how much this case is being settled for, as well as the terms and conditions of the settlement, and the recourse in the event there is any default." The following settlement terms were placed on the record:

    1.  Bussel Realty was to be paid the sum of $900,000.

2. The Franco defendants were to pay Bussel Realty the "sum of $100,000 for which they [were] jointly and severally responsible for payment . . . to be made within ten days of the execution of the settlement documents but in no event later than April 1, 2020."

3. 152 Ridge Road was to "pay the sum of $100,000 to [Bussel Realty] within ten days of the execution of settlement documents but in no event no later than April 1[], 2020."

4. The $440,000 escrow being held from the real estate closing by Montgomery McCracken Walker & Rhoads LLP (Montgomery McCracken) is to be released to Bussel Realty upon execution of an agreement by all parties to the escrow agreement.

5. "The balance of $260,000 [was] to be paid by 152 Ridge Road . . . over a period of [twenty-four] months in [twenty-four] equal installments, the first installment to be due May 1[], 2020."

6. "In the event of a default by the Franco defendants of their payment obligation, [Bussel Realty] will be able to move before [the] [c]ourt ex parte for an entry of judgment in the amount due after ten days' notice to Franco defendants."

7. In the event of a default by 152 Ridge Road, that was "not cured within ten days . . . [Bussel Realty] can move for judgment against 152 Ridge Road . . . for the sum of $1,100,000, less credit for any payments [it makes] or from the release of the escrow to [Bussel Realty]." (3T6:22 to 7:5).

8. Defendants did not waive any claims against Montgomery McCracken for legal malpractice but agreed not to bring claims against the individual

5

attorneys personally.

> 9. The written settlement agreement was to include "standard settlement terms regarding confidentiality and non-disclosure" as well as "non-disparagement by any party of another."

The parties agreed that no further terms and conditions were reached and that they would draft a written settlement agreement consistent with their intent as set forth on the record. At the judge's direction, the parties signed the order of dismissal based on their settlement.

A month later, Bussel Realty filed a motion to enforce the settlement because the parties could not come to terms on a written settlement agreement. A proposed settlement agreement, however, was later signed only by the Franco defendants.

On April 24, the judge granted the motion and ordered that: (1) "the settlement placed on the record . . . on March 9, 2020[,] is . . . enforced"; (2) "each party shall comply with the terms of the settlement placed on the record . . . , as supplemented by the [s]ettlement [a]greement (unsigned)" submitted by Bussel Realty's counsel, "provided . . . that the monetary terms and the dates for payments to [Bussel Realty] remain[ed] as set forth on the record . . . "; and (3) defendants shall "be deemed to have authorized" the release of the escrow funds

A-4274-19

held by Montgomery McCracken to Bussel Realty. The judge's written statement of reasons, provided:

> After reviewing the papers submitted and the accompanying exhibits, the [c]ourt first finds that this matter has been settled as of March 9, 2020. The [c]ourt finds that all parties freely entered into and manifested their intention to be bound by the basic and essential terms of the settlement on March 9, 2020, which the [c]ourt finds are sufficiently definite as opposed to vague and ambiguous. As such, the [c]ourt finds that there was a "meeting of the minds" by all parties on March 9, 2020.
>
> Moreover, the [c]ourt finds that there is nothing submitted in the opposition papers to suggest that the documents as drafted are inconsistent with the intent of the parties and the terms agreed upon on March 9, 2020. Notwithstanding the fact that certain confidentiality terms of the agreement were not decided on March 9, 2020, "[s]o long as the basic essentials are sufficiently definite, any gap left by the parties should not frustrate their intention to be bound." Hagrish v. [Olson], 254 N.J. Super [133,] 138 (App. Div. 1992) (citation omitted).
>
> To that end, the [c]ourt notes that the Franco [d]efendants have signed and executed the drafted settlement documents as of March 20, 2020, which corroborates the fact that the drafted documents are consistent with what was agreed upon by the parties in [c]ourt on March 9, 2020.

152 Ridge Road did not appeal the April 24 order.

A-4274-19

In May 2020, Bussel Realty moved before a different judge to enforce the settlement agreement because 152 Ridge Road failed to make its April 1 and May 1 payments. Bussel Realty sought judgment in the amount of $560,000 ($1,100,000 minus $440,000 (escrow payment) and $100,000 (paid by the Franco defendants)). 152 Ridge Road, a limited liability company that solely derives income from rents from this property, opposed relying on a certification by its controller stating: "[s]hortly after the parties entered into the [a]greement, the COVID-19 global pandemic struck[,] . . . [which] has so adversely affected [its] business, that performance under the [a]greement has since been rendered impractical and impossible." 152 Ridge Road's controller claimed that "by virtue of Governor Murphy's 'stay-at-home' Executive Orders, all tenants ceased their use of the [p]roperty[,]" and as a result, "stopped paying rent to 152 Ridge Road." 152 Ridge Road did not provide any information as to the nature of the tenants' businesses but stated that prior to the pandemic it had monthly net revenue of $5955[2] from the property after payment of its mortgage. Nor does the record indicate from where 152 Ridge Road would receive additional income to satisfy its settlement payment obligations of $100,000 on April 1, followed

---

[2] As of March 9, 2020, 152 Ridge road received monthly rental revenues of $116,185 and had a monthly mortgage payment of $110,230: thus, net income of $5955.

A-4274-19

by twenty-three equal monthly installments of $10,833.34 and a final payment $10,833.18, for a total of $260,000.

On June 15, the second judge issued an order together with an oral decision granting the motion to enforce the settlement agreement and entering judgment against 152 Ridge Road in the amount of $560,000. The judge confirmed the April 24 order determining that a settlement was reached by all parties and rejected 152 Ridge Road's argument that the hardships imposed upon them by the COVID-19 barred enforcement of the settlement agreement. He reasoned the doctrines of impossibility and frustration of purpose were not applicable because

> there [was] no legal or physical barrier for [152 Ridge Road] to pay [Bussel Realty] the agreed-upon amount. The difficulty [152 Ridge Road] has is its lack of revenue during the current state of affairs. However, there is no barrier to [152 Ridge Road] ascertaining funds from any other means in fulfilling its contractual obligations. Even though obtaining the funds needed to fulfill the agreement would undoubtedly be a hardship on [152 Ridge Road], the hardship does not render the performance of . . . [152] Ridge Road impossible.
>
> Similarly, the [d]octrine of [f]rustration of [p]urpose does not apply to the current situation as the purpose of the agreement is to settle litigation. The COVID-19 pandemic, including all related orders of the New Jersey Governor and judiciary, do not preclude the parties from settling up any litigation.

A-4274-19

Therefore, the purpose of the agreement to settle a dispute has not . . . been frustrated or expunged. The only frustration in the current situation is . . . [152] Ridge Road's lack of revenue from (indiscernible). However, that does not frustrate the entire agreement when it is only defendant's ability to perform that is at issue.

So, therefore, the settlement agreement was already enforced by [the initial judge], and judgment will be entered.

II

Before us, 152 Ridge Road argues that the second judge erred in enforcing the settlement agreement because the parties did not reach a meeting of the minds as to its essential elements. (Db11-Db13). The argument essentially challenges the April 24 order, but only the June 15 order was identified as being appealed in the notice of appeal. An order being appealed must be designated as such in the notice of appeal, R. 2:5-1(e)(3)(i); otherwise, it is not subject to the appeal process, Campagna ex rel. Greco v. Am. Cyanamid Co., 337 N.J. Super. 530, 550 (App. Div. 2001). Having said that, for the sake of completeness and the fact that the June 15 order references the April 24 order, we will consider the argument. See Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 211 n.6 (App. Div. 2014) (holding the court, "in the interests of justice," considered all issues raised regarding the dismissal of the third-party complaint, although it was not listed on the notice of appeal).

10

Our state has a strong public policy in favor of settlements. Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008). Essentially, a settlement agreement is a contract. Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (citing Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983)). "As a general rule, courts should enforce contracts as the parties intended." Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (citations omitted). "[P]arties may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking." Comerata v. Chaumont, Inc., 52 N.J. Super. 299, 305 (App. Div. 1958). It is well settled that "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting Borough of W. Caldwell v. Borough of Caldwell, 26 N.J. 9, 24-25 (1958)). If the parties agree on the essential terms and agree to be bound by those terms, they have created an enforceable contract. Ibid. Yet, "a demonstration of 'fraud or other compelling circumstances,'" can invalidate a settlement agreement. Pascarella,

190 N.J. Super. at 125 (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)).

We find no fault with the April 24 and June 15 orders providing that the parties reached an enforceable settlement agreement placed on the record on March 9. See Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974) (recognizing appellate review "give[s] deference to the trial [judge] that heard the witnesses, sifted the competing evidence, and made reasoned conclusions")). The March 9 record, as the judge determined on April 24, clearly reflects that there was a "meeting of the minds" and no genuine dispute that 152 Ridge Road reached a settlement agreement with Bussel Realty, notwithstanding the parties' subsequent inability to confirm their agreement in a written document. They agreed on the essential terms: the amount of money that 152 Ridge Road would pay Bussel Realty, the dates the payments were due, and Bussel Realty's remedy in the event of 152 Ridge Road's default. Indeed, 152 Ridge Road has never disputed the amounts due and the payment dates under the agreement set forth in court on March 9.

Moreover, finalization of a written settlement agreement largely involved stalled negotiations about a confidentiality clause; that is, what could be

12

disclosed in a motion to enforce the settlement terms in the event of a breach. Bussel Realty largely agreed with the changes proposed by 152 Ridge Road. This did not involve the payments to be made and was not an essential term of the agreement. A settlement agreement was therefore reached.

III

Lastly, 152 Ridge Road argues the judge erred in enforcing the settlement agreement because business interruption caused by the COVID-19 pandemic made its performance impossible, or at the very least, impractical, entitling it to relief under the doctrines of impossibility, impracticability, and frustration of purpose. We disagree.

Supervening events that make performance of a contract impractical may excuse performance. See M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 389-90 (2002). "A successful defense of impossibility (or impracticability) of performance excuses . . . [performance of] contract obligations, where performance has become literally impossible, or at least inordinately more difficult, because of the occurrence of a supervening event that was not within the original contemplation of the contracting parties." JB Pool Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n, Inc., 431 N.J. Super. 233, 246 (App. Div. 2013). "The supervening event must be one that had not been

anticipated at the time the contract was created, and one that fundamentally alters the nature of the parties' ongoing relationship." Id. at 245. Both doctrines are concerned with "[a]n extraordinary circumstance [that] may make performance [of a contract] so vitally different from what was reasonably to be expected as to alter the essential nature of that performance." Ibid. (alterations in original) (quoting Restatement (Second) of Contracts, ch. 11, intro. note at 309 (Am. Law Inst. 1981)). For example, where a seller agrees to deliver goods to a buyer by a specific date, at a designated port, but the port is subsequently closed by quarantine regulations, the seller's duty to deliver the goods is discharged. Restatement (Second) of Contracts, § 261 cmt. b, illus. 1. That said, the doctrine of impossibility or impracticability is not applicable where the difficulty is based on market shifts or the financial inability to perform. Restatement (Second) of Contracts, § 261 cmt. b.

"[U]nder the related doctrine of frustration of purpose, . . . the supervening event fundamentally has changed the nature of the parties' overall bargain." JB Pool Mgmt., 431 N.J. Super. at 246. Frustration of purpose "arises when a change in circumstances makes one party's performance worthless to the other, frustrating his purpose in making the contract." Id. at 246-47 (quoting Restatement (Second) of Contracts, § 265 cmt. a). "The frustration must be so

14

severe that it is not fairly to be regarded as the risks that [the party invoking the doctrine] assumed under the contract." Ibid. (alteration in original) (quoting Restatement (Second) of Contracts, § 265 cmt. a).

Applying these principles, 152 Ridge Road's claim of impossibility, impracticability, and frustration of purpose to avoid enforcement of the settlement agreement is without merit. As a result of the COVID-19 pandemic, Governor Murphy declared a public health emergency and state of emergency on March 9, 2020—coincidently, the date the parties placed their settlement agreement on the record. Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020). On March 21, Executive Order 107 was signed, requiring all New Jersey residents to remain at home or at their place of residence unless they fell within one of the nine enumerated exceptions ("reporting to, or performing, their job," is exception number five). Exec. Order No. 107 (Mar. 21, 2020), 52 N.J.R. 554(a) (Apr. 6, 2020). The Governor also ordered "all non-essential retail businesses" to close because of the pandemic emergency. Ibid. Warehouse workers, who were required to be on site to perform their physical duties, were permitted to come in so that warehouses could continue their operations. Ibid.

Further, on April 8, (eleven days after 152 Ridge Road's first payment was due), Governor Murphy signed Executive Order 122, providing that "the State's

manufacturing and warehousing businesses, where essential goods are made and/or stored before delivery to the retail business or consumer, continue to provide a vital service to the public by fueling our supply chain and continue to contribute to New Jersey's response to the present pandemic . . . ." Exec. Order No. 122 (Apr. 8, 2020), 52 N.J.R. 959(a) (May 4, 2020). Essential businesses, such as warehouses, were permitted to continue to maintain in-person operations pursuant to Executive Order 107, provided that they implemented designated safety policies. Ibid.

Given that New Jersey warehouses were permitted to remain open during the pandemic, 152 Ridge Road's contention that the doctrines of impossibility, impracticability, and frustration of purpose bar enforcement of the settlement agreement is unpersuasive because it provided no information as to the identity of its tenants, how many tenants rented the building, what type of businesses they operated, or when they stopped paying rent. Further, 152 Ridge Road was not barred from evicting its commercial tenants, as Executive Order 106, signed on March 19, 2020 (before the first settlement payment was due on April 1), only suspended landlords from evicting residential tenants.[3] Exec. Order No.

---

[3] On July 14, 2020 (four months after the settlement was placed on the record), the Supreme Court issued an order authorizing the circumstances in which a

106 (Mar. 19, 2020), 52 N.J.R. 553(a) (April 6, 2020). 152 Ridge Road's controller's certification does not assert that the settlement was reached based solely on the revenue stream from rents that were not made due to the pandemic. In fact, even if all rents were paid, the net rent income of $5955 would not enable 152 Ridge Road to pay its settlement obligations of $100,000 on April 1, followed by twenty-three equal monthly installments of $10,833.34 and a final payment $10,833.18. Accordingly, any loss of revenue because of COVID-19 did not render settlement performance impossible or fundamentally change the nature of the bargain.

To the extent we have not addressed any of 152 Ridge Road's arguments, it is because we conclude they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

commercial landlord could begin to take certain steps to resolve disputes with their tenants. Judge Glenn A. Grant, Notice to the Bar, COVID-19 – Landlord/Tenant – Amendment of Summons and Complaint Forms (Rules Appendices); Orders to Show Cause, 226 N.J.L.J. 29 (July 20, 2020).